Renee J. Waters
Principal Assistant City Attorney for
Michael G. Rankin
CITY ATTORNEY
P.O. Box 27210
Tucson, AZ  85726-7210
Telephone:  (520) 791-4221
Fax:  (520) 623-9803
Renee.Waters@tucsonaz.gov
State Bar No. 031691
Pima County Computer No. 90191
*Attorneys for Defendant City of Tucson*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ESTATE OF RICHARD LEE RICHARDS BY SPECIAL ADMIN VICTORIA RICHARDS,<br><br>Plaintiff,<br><br>vs.<br><br>RYAN T. REMINGTON; et al.,<br><br>Defendants. | No. 4:22-cv-00429-JGZ<br><br>**AMENDED<br>MOTION TO DISMISS**<br><br>(Assigned to Hon. Jennifer G. Zipps) |

Defendant, City of Tucson, by and through undersigned counsel hereby move to dismiss Plaintiff's Complaint in its entirety pursuant to Fed. R. Civ. Pro. 12(b)(6).

**LRCiv 12.1(c) Certification**

~~Defendant's counsel was unable to confer with counsel for Plaintiff prior to filing this motion because Plaintiff's counsel is in trial in another matter. Counsel has no meaningful expectation that conferral will change the parties' positions and so timely files the City's Motion to Dismiss. The parties will be able to confer by Friday, January 20, 2023, after which the City will immediately either file a supplement confirming that the meet and confer was held and the parties agreed that the issues could not be resolved by amendment or a withdrawal of the Motion to Dismiss, whichever is appropriate.~~

Counsel for Plaintiff and the City were able to hold a telephonic meet and confer on January 20, 2023, regarding the issues raised herein. After conferring, the parties agreed

1

that the issues presented are purely legal in nature and cannot be cured by amendment to the pleading.

## Introduction

Plaintiff, the Estate of Richard Lee Richards, brings suit against the City of Tucson and former officer Ryan Remington for Remington's November 29, 2021, use of deadly force against Richards. Plaintiff alleges two counts against the City of Tucson: Count II, a violation of Title II of the Americans with Disabilities Act; and Count III, an alleged violation of the Rehabilitation Act. The City of Tucson moves to dismiss both counts.

## Argument

Plaintiff alleges that the City of Tucson failed to modify its departmental policies, practices, and procedures to accommodate Richards' disability. Plaintiff identifies Richards' disability as his "use of a mobility aid," and alleges that Remington used lethal force rather than a Taser because of Richards' wheelchair. (Doc. 1, ¶ 87-91).

### I. The City of Tucson is not liable under either Title II of the Americans with Disabilities Act or the Rehabilitation Act.

Plaintiffs often bring claims under Title II in conjunction with claims under the Rehabilitation Act. The standard for the two claims is "largely coextensive." *Policing Under Disability Law*, Jamelia N. Morgan, 73 Stan.L.Rev. 1401, 1426 (2021). The Supreme Court has never affirmed that a municipality may be liable under either law for actions undertaken by a police officer either effecting an arrest or engaging in the use of force. Not all circuit courts recognize the claim either and, among those that do, there are discrepancies in what constitutes a viable claim. *Id*. at 1401. The Ninth Circuit has previously permitted claims under Title II, and *Sheehan v. City and County of San Francisco* provides the operative framework for their evaluation. 743 F.3d 1211 (9th Cir, 2014), (*revs'd on other grounds*).

To state a claim, Plaintiff must show that Richards 1) was a person with a disability; 2) was otherwise qualified to participate in the City's services; 3) was denied the benefits of the City's services or otherwise discriminated against in the provision of services; and

4) the disability was the basis of the denial or discrimination of services. *Id.* at 1232. Department of Justice regulations state the matter more simply:

> "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

Public entities are not required to modify services where it would fundamentally alter the nature of the service provided or where the subject poses a "direct threat" to the health or safety of others. 28 C.F.R. § 35.139(a).

Assuming that Title II and the Rehabilitation Act apply to police arrests and use of force,[1] Plaintiff has not adequately alleged that the City's failure to make a policy accommodation was the moving force behind the alleged violation, and under the Justice Department guidelines, the City would not be required to modify its services in any event.

    **a. Remington violated Tucson Police Department policy when he killed Richards; therefore, TPD's alleged failure to make a policy accommodation for wheelchair-bound suspects was not the cause of Remington's use of force.**

Plaintiff's Complaint fails to adequately allege that the City failed to accommodate Richards' disability. Plaintiff draws the legal conclusion (Doc. 1, ¶ 89), but does not provide the necessary factual allegations to state a claim. Under Rule 8, a Complaint must not merely recite conclusions; it is required to provide well-pled facts that, if taken as true, would permit the reasonable inference that the defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009). Mere conclusions are not entitled to the same assumption of truth as facts. *Id.*

In addition to Plaintiff's conclusory allegations that the City failed to accommodate Richards' disability, Plaintiff acknowledged elsewhere in the Complaint that Richards' use

---

[1] The City reserves the right to later challenge the applicability of both the ADA and Rehabilitation Act to police use of force and arrests.

of force violated TPD policy. (Doc. 1, ¶ 11, 58, 59, and 61). It defies logic that the City of Tucson could be liable for not adopting a policy that would accommodate Richards' disability when Richards' Complaint acknowledges that the policy in place at the City prohibited Remington's use of deadly force. No different or additional policy was necessary.[2]

      b. **Public entities are not required to provide an accommodation if it would fundamentally alter a service or activity or where the subject poses a direct threat.**

The City is also entitled to dismissal because adopting a separate policy regarding the use of force or apprehension of individuals with a disability would fundamentally alter the nature of the task and because a recalcitrant subject with a knife is a direct threat (even if he is not an imminent threat). Every Circuit Court to consider the application of Title II or the Rehabilitation Act to police use of force and on-the-street-arrests has emphasized the importance of exigent circumstances in evaluating what may constitute a reasonable accommodation. *Policing Under Disability Law*, at fn. 143. And such an emphasis makes sense. Police use of force is often characterized by split-second decisions. It is also often precipitated by a show or threat of force from the subject.

As outlined in Justice Department guidelines and uncontradicted by case law, a police department need not require its officers to change the fundamental nature of their interactions with a suspect who has a disability. It is one thing to require an officer conducting a DUI stop to provide an alternative to traditional field sobriety tests to a suspect with mobility issues and quite another to expect that the way police use force, a decision governed by both internal policies and the Constitution, will be adjusted on a case-by-case basis. In fact, any officer using force under TPD's policy *must* be confronted with a direct threat; deadly force requires that the officer or a third party be in imminent danger of serious physical injury or death. (Doc. 1, ¶ 61). Therefore, there is no

---

[2] This is reminiscent of the principle in *Monell* cases that a municipality need not train officers to avoid conduct that is patently obviously wrong. *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159-60 (9th Cir. 2014).

circumstance where a TPD officer uses deadly force within TPD policy when he is not also confronted with a direct threat. And a subject who poses a direct threat is not entitled to an accommodation under Title II.

### Conclusion

Tucson Police Department policy prohibited Remington's use of deadly force, and there is no viable argument that the City's policy was the moving force behind the officer's conduct. For these reasons, the City is entitled to dismissal on Counts II and III of Plaintiff's Complaint.

DATED: January 20, 2023.

          MICHAEL G. RANKIN
          City Attorney

By   */s/ Renee J. Waters*
      Renee J. Waters
      Principal Assistant City Attorney

# CERTIFICATE OF SERVICE

I hereby certify that January 20, 2023, the foregoing document was electronically transmitted to the Clerk's Office using the CM/ECF System for Filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants.

John H. Bradley
R. Rick Resch
STRANG BRADLEY, LLC
613 Williamson Street, Suite 204
Madison, Wisconsin 53703
John@StrangBradley.com
Rick@StrangBradley.com
    *Attorneys for Plaintiff*

Andrew Peterson
6063 E. Grant Rd.
Tucson, AZ 85712
apetersen@humphreyandpetersen.com
    *Attorney for Co-Defendant Remington*


By /s/ C. Loss