**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Estate of Richard Lee Richards by Special Administrator Victoria Richards,<br><br>Plaintiff,<br><br>v.<br><br>Ryan T Remington, et al.,<br><br>Defendants. | No. CV-22-00429-TUC-JGZ<br><br>**ORDER** |

Plaintiff, the Estate of Richard Lee Richards, filed suit against the City of Tucson and Tucson Police Department (TPD) Officer Ryan Remington for Remington's November 29, 2021 use of deadly force against Richards. (Doc. 1.) In the Complaint, Plaintiff asserts two claims against Remington—use of excessive force in violation of 42 U.S.C. § 1983 and wrongful-death pursuant to A.R.S. § 12-611 (Counts I and IV); and two claims against the City—violation of Title II of the Americans with Disabilities Act (ADA) and violation of the Rehabilitation Act (RA) (Counts II and III). (*Id.* ¶¶ 75–106.) Now pending before the Court is the City's Amended Motion to Dismiss Counts II and III. (Doc. 12.) The Motion does not address the propriety of Remington's use of force. Rather, the City argues that Plaintiff's ADA and RA claims lack a cognizable legal theory and therefore must be dismissed. (*Id.*) The Motion is fully briefed. (Docs. 12, 13, 15.)

The Court will address the ADA and RA claims jointly because Plaintiff and the City do not differentiate between the two claims and agree they are largely coextensive.

(Docs. 12 at 2; 13 at 2–3.) For the reasons that follow, the Court will deny the City's Motion.

**I.      Factual Allegations in the Complaint**

On November 29, 2021, Richard Lee Richards was killed by TPD Officer Ryan Remington as Richards sat in his wheelchair. (Doc. 1 ¶ 1.) According to the Complaint, Remington responded to a shoplifting call, in uniform, while working on a special duty assignment, providing security guard services at Wal-Mart. (*Id.* ¶¶ 25–31, 38.) Remington followed Richards into the parking lot and drew his gun after Richards reportedly showed a knife to a Wal-Mart employee who asked to see the receipt for the toolbox Richards carried as he exited the store in his motorized wheelchair. (*Id.* ¶¶ 31–33.) Plaintiff asserts Richards was evasive and nonthreatening, and discarded the toolbox in the parking lot before he attempted to enter a Lowe's Garden Center in his wheelchair. (*Id.* ¶¶ 34–36, 44, 62.) Plaintiff further alleges that Remington instructed Richards not to enter the Lowe's Garden Center and then fired his gun nine times without warning, hitting Richards with eight bullets and killing him. (*Id.* ¶¶ 44, 49, 53–55.)

Relevant to the pending motion, Plaintiff alleges Richards is a qualified person under the ADA and RA because he suffered from a broken hip and was disabled and confined to a wheelchair. (*Id.* ¶¶ 83–86, 94–96.) Plaintiff alleges the City failed to reasonably accommodate Richards and discriminated against him based on his disability by failing to conduct a self-evaluation plan and implement policies, procedures, and training to instruct officers how to safely interact with persons who use wheelchairs. (*Id.* ¶¶ 87–89, 97–99.) Plaintiff also alleges Remington failed to reasonably accommodate Richards and discriminated against him based on his disability by choosing to use a gun rather than a non-lethal use of force because Richards was in a wheelchair. (*Id.* ¶¶ 90, 100.) More specifically, Plaintiff alleges that Remington stated, through his lawyer, that one of the reasons he used his gun rather than his taser was "[be]cause of the wheelchair." (*Id.* ¶¶ 91, 101.)

//

## II. Applicable Law

### A. Motion to Dismiss under Rule 12(b)(6)

When analyzing a complaint for failure to state a claim for relief under Rule 12(b)(6), the court takes the well-pled factual allegations of the complaint as true and construes them in the light most favorable to the nonmoving party. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). To prevail on a motion to dismiss under Rule 12(b)(6), the movant must show either that the complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Substantive Claims

To state a claim under the ADA and RA, a plaintiff generally must show:

(1) he is an individual with a disability;

(2) he is otherwise qualified to participate in or receive the benefit of a public entity's services, programs or activities;

(3) he was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and

(4) such exclusion, denial of benefits or discrimination was by reason of her disability.

*See Sheehan v. City & Cnty. of S.F.*, 743 F.3d 1211, 1232 (9th Cir. 2014) (*Sheehan I*), *cert. dismissed in part sub nom.*, *City & Cnty. of S.F., Calif. v. Sheehan*, 575 U.S. 600 (2015) (*Sheehan II*); *Vos v. City of Newport Beach*, 892 F.3d 1024, 1036 (9th Cir. 2018).

In *Sheehan I*, the Ninth Circuit Court of Appeals identified two types of ADA Title II claims applicable to an arrest:

(1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and

> (2) reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees.

*Sheehan I*, 743 F.3d at 1232. In *Sheehan II*, the Supreme Court granted certiorari to consider whether Title II of the ADA requires law enforcement officers to provide "any accommodation" during the arrest of an armed and violent individual. 575 U.S. at 608. Because the defendant in *Sheehan II* effectively conceded this issue, the Court dismissed and declined to consider it. 575 U.S. at 609–10. *Sheehan I* therefore remains controlling law in this Circuit. *Vos*, 892 F.3d at 1036.

### III. Discussion

The City acknowledges that controlling precedent holds that the ADA and RA apply to police arrests and excessive-force claims and reserves its rights to make further challenges to this precedent.[1] *See, e.g.*, *Sheehan I*, 743 F.3d at 1232 (ADA may apply to officers shooting mentally ill arrestee who threatened them with a knife); *Vos*, 892 F.3d at 1037 (ADA and RA may apply to officers shooting mentally unstable and drug-impaired arrestee who threatened them with scissors). Indeed, the ADA and RA apply broadly to "anything a public entity does." *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002). Assuming that the ADA and RA apply to police arrests and excessive-force claims, the City advances two arguments in support of the dismissal of Counts II and III for lack of a cognizable legal theory: (1) Plaintiff's ADA and RA claims, as pled, are so inconsistent with its excessive-force claim that they are implausible; and (2) Richards was not entitled to reasonable accommodations because he was a direct threat. The Court will address each argument in turn.

//

//

---

[1] Although the City acknowledges that this Court is bound by the Ninth Circuit precedent, the City notes that the circuits are split and the Supreme Court has yet to weigh in on whether the ADA and RA apply to police arrests. (Doc. 12 at 3, n.1.)

- 4 -

### A. Plausibility of Inconsistent Claims

The City argues Plaintiff has not adequately alleged that the City's failure to make a policy accommodation was the moving force behind the alleged violations. (Doc. 12 at 3.) According to the City, Plaintiff's ADA and RA claims are so factually inconsistent with Plaintiff's excessive-force claim that the ADA and RA claims are implausible. (*Id*. at 3–4.) That is, Plaintiff cannot allege that Remington's use of force both violated TPD use-of-force policy *and* was caused by TPD not having a wheelchair-specific policy. (*Id.*) The City reasons that, if Remington violated TPD use-of-force policy, then having a wheelchair-specific policy would not have prevented the shooting because Remington would have violated that policy too. (*See id.*) The City analogizes to *Monell* cases which hold that a municipality need not train officers to avoid conduct that is patently wrong. (Doc. 12 at 4, n.2.)

The City's argument is not persuasive. First, Rule 8 of the Federal Rules of Civil Procedure expressly allows plaintiffs to plead as many alternate, hypothetical, or separate claims as they have, either in a single count or separate counts, regardless of consistency. Fed. R. Civ. P. 8(d). Second, Plaintiff may allege the ADA and RA claims based on Remington's conduct, not just the City's failure to train or implement policies and procedures. Under controlling precedent, "[w]hen a plaintiff brings a direct suit under either the Rehabilitation Act or Title II of the ADA against a municipality (including a county), the public entity is liable for the vicarious acts of its employees." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001); *see also Bonner v. Lewis*, 857 F.2d 559, 567 (9th Cir. 1988); *United States v. Town of Colo. City*, 935 F.3d 804, 808–09 (9th Cir. 2019).[2]

In its Reply, the City acknowledges that in *Duvall v. County of Kitsap*, the Ninth

---

[2] Notably, in *Town of Colorado City*, the Ninth Circuit declined to extend *Monell*'s holding—that a municipality cannot be held vicariously liable under 42 U.S.C. § 1983—to claims brought pursuant to the Violent Crime Control and Law Enforcement Act. 935 F.3d at 808–09. In so doing, the Ninth Circuit noted that *Monell* was an exception to the general rule that *respondeat superior* liability applies to actions brought under civil-rights statutes. *Id.* The City's analogy to *Monell* cases is thus inapposite.

Circuit applied basic *respondeat superior* liability to a claim brought under the ADA and RA. (Doc. 15 at 1.) The City argues, however, that under more recent case law, it cannot be held vicariously liable under the ADA or RA for Remington's conduct. (*Id.*) In support, the City cites *Jones v. City of Detroit, Mich.*, 20 F.4th 1117 (6th Cir. 2021), *cert. denied*, 143 S. Ct. 84 (2022); *Ingram v. Kubik*, 30 F.4th 1241, 1246 (11th Cir. 2022), *cert. dismissed*, 142 S. Ct. 2855 (2022); and *United States v. Cnty. of Maricopa, Ariz.*, 889 F.3d 648 (9th Cir. 2018). *Jones* and *Ingram* are out-of-circuit opinions and not controlling law. The City misstates the holding of *County of Maricopa, Arizona*. In that case, the Ninth Circuit considered whether Maricopa County could be liable under Title VI of the Civil Rights Act of 1964 or the Violent Crime Control and Law Enforcement Act for the acts of its policymakers, specifically the County Sheriff—an issue of first impression. *Cnty. of Maricopa, Ariz.*, 889 F.3d at 651–52. The case did not address the vicarious liability of a municipality for the acts of its employees under the ADA or RA. *See id.* at 649.

### B. Direct Threat

The City next argues that the ADA and RA claims fail as a matter of law because it need not have a policy to reasonably accommodate persons in wheelchairs who are direct threats. (Doc. 12 at 4.) According to the City, "adopting a separate policy regarding the use of force or apprehension of individuals with a disability would fundamentally alter the nature of the task [of policing] and a recalcitrant subject with a knife is a direct threat."[3] (*Id.*) For support, the City relies on 28 C.F.R. § 35.130(b)(7)(i), which states a public entity need not provide a reasonable accommodation that would fundamentally alter "the nature of the [public entity's] service, program, or activity." The City also relies on § 35.139:

> (a) This part does not require a public entity to permit an individual to participate in or benefit from the services, programs, or activities of that public entity when that individual poses a **direct threat to the health or safety of others.**

---

[3] Although the City implies that Richards was "a recalcitrant subject with a knife" and thus a direct threat, it fails to support these conclusions with facts from the Complaint or legal argument. (*See* Doc. 12 at 4.)

> (b) In determining whether an individual poses a ***direct threat*** to the health or safety of others, a public entity must make ***an individualized assessment***, based on ***reasonable judgment*** that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether ***reasonable modifications*** of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk.

28 C.F.R. § 35.139 (emphasis added).

Inherent in the City's arguments are two assumptions: the City's ADA and RA liability, if it exists at all, extends only to policy-level decisions; and Richards was a direct threat. The first assumption is incorrect because, as discussed above, the City may be vicariously liable for Remington's conduct. The second assumption is premature because a direct-threat assessment under § 35.139 turns on reasonableness, which is ordinarily a question of fact not to be resolved at the pleadings stage. *See Sheehan I*, 743 F.3d at 1233 ("[T]he reasonableness of an accommodation is ordinarily a question of fact."); *Iqbal*, 556 U.S. at 679 (on a motion to dismiss, a court should assume the veracity of well-pleaded factual allegations).

The City also contends that Plaintiff's ADA and RA claims are not legally cognizable because "a police department need not require its officers to change the fundamental nature of their interactions with a suspect who has a disability." (Doc. 12 at 4.) The City reasons that officers facing direct threats and considering the use of deadly force must follow "internal policies and the Constitution" rather than assess persons with disabilities "on a case-by-case basis." (*See id.*) This argument misses the point of 28 C.F.R. § 35.139(b), which requires officers to make "an individualized assessment" as well as employ "reasonable judgment" and "reasonable modifications of policies" when determining whether a person is a direct threat. These requirements, however, are not an extra burden on officers facing life-threatening situations. The ADA and RA require the same reasonableness from officers as does the Fourth Amendment; Plaintiff's constitutional claim and ADA and RA claims thus all turn on whether Remington's conduct was *reasonable under the circumstances*, which include Richards's disability. *See Moore v. City of Berkeley*, No. 14-CV-00669-CRB, 2018 WL 1456628, at \*14 (N.D. Cal. Mar.

23, 2018) ("[T]he analysis of unreasonableness under the Fourth Amendment, and the analysis of whether a defendant has provided a 'reasonable accommodation' under the ADA . . . . are one and the same."), *aff'd*, 801 F. App'x 480 (9th Cir. 2020); *Bates ex rel. Johns v. Chesterfield Cnty., Va.*, 216 F.3d 367, 373 (4th Cir. 2000) ("We need not undertake an independent ADA inquiry in this case because our Fourth Amendment scrutiny has already accounted for all the situation's circumstances.").

### IV.  Conclusion

In sum, Plaintiff pleads sufficient facts to establish facially plausible ADA and RA claims. Plaintiff alleges that Richards was disabled and confined to a wheelchair; Richards was evasive and non-threatening; and Remington decided to use his gun and kill Richards, rather than deploy a less-lethal use of force, because Richards used a wheelchair. (*See* Doc. 1 ¶¶ 34–36, 62, 83–86, 90–92, 94–96, 100–02.) Accepting these allegations as true, Plaintiff states a claim that Remington failed to reasonably accommodate Richards and caused him to suffer a greater injury than other arrestees would have suffered because he was disabled. *See Sheehan I*, 743 F.3d at 1232; *Iqbal*, 556 U.S. at 678. Finally, under the doctrine of vicarious liability, Plaintiff's allegations based on Remington's conduct are sufficient to state ADA and RA claims against the City.

Accordingly,

**IT IS ORDERED** that the City of Tucson's Amended Motion to Dismiss (Doc. 12) is **denied**.

Dated this 14th day of March, 2023.

Honorable Jennifer G. Zipps
United States District Judge